FILED

2014 Jun-06  PM 03:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JANET COATES, as an individual and as a representative of the classes,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>MIDFIRST BANK d/b/a MIDLAND MORTGAGE, and FIRSTINSURE, INC.,<br><br>　　　　　　Defendants. | Case No: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Janet Coates ("Plaintiff"), on behalf of herself and the Classes set forth below, and in the public interest, brings the following Class Action Complaint against Defendants MidFirst Bank d/b/a Midland Mortgage ("Midland") and FirstInsure, Inc. ("FirstInsure") (collectively "Defendants"):

## PRELIMINARY STATEMENT

1. Plaintiff and the Class members have or have had mortgages[1] secured by real property, and were charged for lender-placed (also known as "force-placed") hazard insurance by Midland.

2. Although mortgage servicers such as Midland generally have the right to charge borrowers for force-place hazard insurance when the property securing a

---

[1] As used herein, the term "mortgages" includes deeds of trust and other security instruments.

1

mortgage loan is not insured by the borrower, Midland abused that right by arranging for kickbacks for itself and/or its affiliate, FirstInsure, in connection with force-placed hazard insurance, and passing on the cost of these kickbacks to borrowers.

3.     Defendants arranged for and accepted these kickbacks in bad faith, knowing that their actions were not authorized by borrowers' mortgage contracts and were inconsistent with applicable law.

4.     Based on this conduct, Plaintiff asserts claims against Midland for breach of contract (Count One) and breach of the covenant of good faith and fair dealing (Count Two).  In addition, Plaintiff asserts claims against both Defendants for unjust enrichment/restitution (Count Three).

5.     Plaintiff asserts these claims on behalf of both a proposed nationwide class and a proposed statewide class (the "Classes"), as set forth in Paragraphs 36 - 37 of this Complaint.[2]

6.     Plaintiff and the Classes seek injunctive relief, corresponding declaratory relief, monetary relief, and other appropriate relief for Defendants' unlawful conduct, as described herein.

---

[2] Plaintiff reserves the right to amend her proposed class definitions or to propose other or additional classes in her class certification motion, after having had an opportunity for further discovery.

## THE PARTIES

7.      Individual and representative Plaintiff Janet Coates resides in Birmingham, Alabama.  Plaintiff is a member of the Classes defined below.

8.      Defendant Midland is headquartered in Oklahoma City, Oklahoma, and is engaged in the business of mortgage lending and servicing throughout the United States.

9.      Defendant FirstInsure is an affiliate of Midland, and is headquartered in Oklahoma City, Oklahoma.  FirstInsure is registered with the Oklahoma Secretary of State as a domestic for-profit insurance corporation, but does not issue insurance policies or file insurance rates.  As set forth below, FirstInsure receives so-called "commissions" in connection with lender-placed insurance covering the property of Midland mortgagors in Alabama and other states.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of the State of Alabama, and Defendants are citizens of Oklahoma.  The amount in controversy in this action exceeds $5,000,000.00, and there are more than 100 members of each of the Classes.

11.      Venue is proper in the United States District Court, Northern District of Alabama, pursuant to 28 U.S.C. § 1391.  Plaintiff resides in this District,

Defendants regularly conduct business in this District, and Plaintiff's property is located in this District.

## FACTUAL ALLEGATIONS

### *Origination of Plaintiff's Mortgage Loan*

12.    On or about October 2, 1990, Plaintiff became obligated on a mortgage loan from Midland in the amount of $53,500, secured by a deed of trust on her property located at 3009 Apple Valley Lane, Birmingham, Alabama. Specifically, pursuant to agreement, Plaintiff assumed the mortgage of the prior owners, and that preexisting mortgage was transferred to her. *See Exhibit 1 (purchase agreement); Exhibit 2 (loan transfer statement); Exhibit 3 (original note and mortgage).*

13.    The mortgage has recently been paid off in full, but for the life of the loan, Midland was the lender-in-interest to Plaintiff's mortgage loan, and serviced the loan through its Midland Mortgage division.

14.    Plaintiff's deed of trust ("Mortgage") allowed Midland to force-place hazard insurance coverage, and to charge Plaintiff for any out-of-pocket costs actually incurred by Midland in connection with such coverage, if Plaintiff failed to maintain hazard insurance coverage on the property securing the loan. *See Exhibit 3, p. 3, ¶ 8.* However, the Mortgage did not allow Midland to charge Plaintiff gross amounts that were later rebated or refunded to Midland or its

4

affiliates in the form of kickbacks, commissions, or other compensation (i.e., discounted insurance tracking services).

***Force-Placed Insurance on Plaintiff's Property and Resulting Kickback to Defendants***

15.   On a number of occasions, Midland force-placed hazard insurance coverage on Plaintiff's Property.

16.   Most recently, in a letter dated April 19, 2013, Midland sent Plaintiff a "Lender Placed Insurance Policy Letter," informing Plaintiff that it had force-placed hazard insurance coverage on her Property through QBE Insurance Corporation ("QBE"). *See Exhibit 4.*  This letter stated that Plaintiff's mortgage escrow account had been charged $1,387.50 for lender-placed hazard insurance, and as a result, her mortgage payment would be increased accordingly.  The letter further acknowledged that "[a]n affiliate of Midland, FirstInsure, earns a commission on, and/or derives other income from, premiums from lender placed insurance." *Id., p.2.*

17.   This force placed insurance was partially cancelled after Plaintiff paid off her loan.  On or about July 2, 2013, QBE sent a letter to Plaintiff, "c/o MidFirst / Midland Mortgage", stating that "[t]he lender placed insurance coverage previously issued on the property ... was cancelled effective 6/28/13" because "LOAN IS PAID OFF[.]" *See Exhibit 5.*  However, the same letter stated that an

allegedly earned premium of $505.58 would be retained for the period that this force-placed coverage was in effect (from February 15, 2013 to June 28, 2013).

18.   FirstInsure received a commission from QBE in connection with this lender-placed hazard insurance, consistent with Midland's standard business practice. *See infra* at ¶¶ 20-22. This commission was not legitimately earned, and was simply a kickback from QBE in return for Midland's force-placed hazard insurance business.   In addition, Midland also received discounted insurance tracking services from QBE in return for placing hazard insurance coverage with QBE.   This constituted a second form of kickback from QBE to Midland.

19.   These kickbacks were not deducted from the insurance charges that were billed to Plaintiff by Midland.   As a result, Plaintiff was forced to pay the gross amount of the insurance charges, rather than the actual out-of-pocket cost to Midland, in order to pay off her loan in full.   This resulted in a substantial and unjustified windfall to Midland and its affiliate, FirstInsure.

***Defendants Typically Received Kickbacks in Connection with Force-Placed Hazard Insurance***

20.   The practice of force-placing insurance is a very lucrative business for Midland and other mortgage servicers.   Commonly, the servicer selects the insurance provider in accordance with a pre-arranged agreement whereby the insurance provider pays a percentage of the premiums back to the servicer as an inducement to do business with the insurance provider.   Under these arrangements,

6

the provider of the force-placed insurance pays a so-called "commission" either directly to the mortgage servicer or to an affiliate of the servicer who poses as an insurance "agent."

21.    These types of commission arrangements were the subject of an award-winning exposé in *American Banker* magazine. *See Exhibit 6.*  A follow up article published by *American Banker* found that, "a cursory review of force-placed insurers' financials suggests that the business brings servicers hundreds of millions of dollars each year." *See Exhibit 7.*

22.    As acknowledged in the letter that Midland sent to Plaintiff, Defendants have this sort of commission arrangement with QBE. *See Ex. 4 at p.2.* This arrangement is also a matter of public record. See *Casey v. Citibank, N.A., et. al.,* 5:12-cv-00820 (N.D.N.Y) ECF 172-2, at 9.

23.    In addition to paying so-called "commissions" to FirstInsure, QBE also provided discounted insurance tracking services to Midland.  This constituted a second form of kickback to Midland in return for Midland's force-placed hazard insurance business.

### The Kickback Arrangements Are Unjust and Unlawful

24.    The kickback arrangements between Defendants and QBE are unjust and unlawful.

25.    Numerous courts have condemned this type of self-dealing in connection with force-placed insurance. *See, e.g.*, *Simpkins v Wells Fargo Bank, N.A.*, 2013 WL 4510166, at *7 (S.D. Ill. Aug 26, 2013); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1123 (N.D. Cal. 2013); *Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025, 1038 (N.D. Cal. 2013); *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 269133, at *10  (N.D. Cal. Jan. 24, 2013); *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255, 267 (N.D.N.Y. 2013); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 955-61 (N.D. Cal. 2012); *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 513 (E.D. Pa. 2012); *Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346, at *2, *4 (S.D. Fla. Oct. 14, 2011); *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1278-79 (S.D. Fla. 2009); *Gipson v. Fleet Mortgage Grp., Inc.*, 232 F. Supp. 2d 691, 707 (S.D. Miss. 2002); *Stevens v. Citigroup, Inc.*, 2000 WL 1848593, at *1, *3 (E.D. Pa. Dec. 15, 2000).

26.    In fact, the *Casey* court declined to dismiss nearly identical kickback claims against Midland and FirstInsure relating to force-placed flood insurance. *See Casey*, 915 F. Supp. at 267.  As a result of that lawsuit, Defendants recently agreed a class action settlement under which borrowers will receive back a substantial percentage of the amount that they were charged for force-placed flood

insurance. *See Casey*, No. 5:12-cv-00820 (N.D.N.Y.), Dkt. No. 172-4 (Settlement Agreement filed May 5, 2014); *id.*, Dkt. No. 177 (preliminary approval order).

27.     Midland also previously agreed to settle similar claims relating to force-placed hazard insurance in *Hall v. Midland Grp. & Midfirst Bank*, 2000 WL 1725238 (E.D. Pa. Nov. 20, 2000), *aff'd sub nom. Hall v. Midland Grp.*, 275 F.3d 35 (3d Cir. 2001). Thus, Midland knew or should have known that the types of kickbacks at issue in this case exposed it to liability.

28.     These types of kickback arrangements also have been condemned by Fannie Mae, the Federal Housing Finance Agency ("FHFA"), the U.S. Department of Housing and Urban Development ("HUD"), and other regulators.

29.     For example, on March 14, 2012, Fannie Mae issued a Servicing Guide Announcement ("SGA") pertaining to lender-paced insurance. *See Exhibit 8.* In the SGA, Fannie Mae clarified its requirements relating to reasonable reimbursable expenses for lender-placed insurance, and stated that "reimbursement of lender-placed insurance premiums must **exclude** any lender-placed insurance commission earned on that policy by the servicer or any related entity[.]" *Id.* at 4 (emphasis in original).[3]

---

[3] The U.S. Department of Housing and Urban Development has promulgated similar guidance in its Lender Manual. *See Exhibit 9.*

30.     Earlier that same month, on March 6, 2012, Fannie Mae issued a Request for Proposal ("RFP") relating to lender-placed insurance. *See Exhibit 10.* In the RFP, Fannie Mae stated that it had conducted an "extensive internal review" of the lender-placed insurance process, and found that the process "can be improved through unit price reductions and fee transparency to the benefit of both the taxpayers and homeowners." *Id. at 2.* In particular, Fannie Mae made the following observations:

- "Lender Placed Insurers often pay commissions/fees to Servicers for placing business with them.  The cost of such commissions/fees is recovered in part or in whole by the Lender Placed Insurer from the premiums[.]"

- "The existing system may encourage Servicers to purchase Lender Placed Insurance from Providers that pay high commissions/fees to the Servicers and provide tracking, rather than those that offer the best pricing and terms . . . .  Thus, the Lender Placed Insurers and Servicers have little incentive to hold premium costs down."

- "[M]uch of the current lender placed insurance cost borne by Fannie Mae results from an incentive arrangement between Lender Placed Insurers and Servicers that disadvantages Fannie Mae and the homeowner."

*Id.*  Accordingly, Fannie Mae stated that it sought to "[r]estructure the business model to align Servicer incentives with the best interest of Fannie Mae and homeowners." *Id. at 3.*  Among other things, Fannie Mae sought to "[e]liminate the ability of Servicers to pass on the cost of commissions/fees to Fannie Mae" and to "[s]eparate the commissions and fees for Insurance Tracking Services from the

fees for Lender Placed Insurance to ensure transparency and accountability." *Id. at 2.*

31.    Although the RFP was later abandoned by the FHFA in February 2013 in its capacity as the conservator of Fannie Mae and Freddie Mac, the FHFA has ***not*** endorsed the type of kickback arrangements at issue here.  To the contrary, the FHFA concluded the very next month that these kickback arrangements should be eliminated from the force-placed insurance process.  Specifically, on March 29, 2013, the FHFA published a Notice in the Federal Register regarding Lender Placed Insurance.  *See* FHFA, *Lender Placed Insurance, Terms and Conditions*, 78 Fed. Reg. 19263, 19264 (Mar. 29, 2013).  This Notice is intended to "address certain practices relating to lender placed insurance that the [FHFA] considers contrary to prudent business practices[.]"  *Id.* at 19263.  The specific practices identified include "sales commissions[,]" *id.* at 19264, which the FHFA concluded present "litigation and reputation risks[.]"  *Id.* at 19263.  Therefore, the FHFA stated that it intends to ban such financial arrangements in connection with mortgage loans that are owned by Fannie Mae or Freddie Mac:

> Certain Sales Commissions.  The Enterprises shall prohibit sellers and servicers from receiving, directly or indirectly, remuneration associated with placing coverage with or maintaining placement with particular insurance providers.

11

*Id.* at 19264.  According to the FHFA, there are "concerns regarding conflicts" in connection with these types of financial arrangements.  *Id.*

32.    Moreover,  the  New  York  Department  of  Financial  Services ("NYDFS") held an extraordinary three-day public hearing in May 2012 regarding the force-placed insurance practices of several mortgage lenders, servicers, and insurance companies.  On the opening day of the hearings, NYDFS Superintendent Benjamin Lawsky issued a statement, announcing that "our initial inquiry into the operation of the force placed insurance market has raised a number of serious concerns and red flags."  *See Exhibit 11 at 2.*  Among other things, Superintendent Lawsky noted that:

> there . . . appears to be a web of tight relationships between the banks, their subsidiaries and insurers that have the potential to undermine normal market incentives and may contribute to other problematic practices.  In some cases this takes the form of large commissions being paid by insurers to the banks for what appears to be very little work.

*Id.*  Superintendent Lawsky further stated that "[t]his perverse incentive, if it exists, would appear to harm both homeowners and investors while enriching the banks and the insurance companies."  *Id.* at 3.

33.    Following these hearings, the NYDFS entered into a Consent Order with QBE.  Among other things, this Consent Order (1) forbids QBE from paying "commissions to a servicer or a person or entity affiliated with a servicer on force-

placed insurance policies obtained by the servicer"; and (2) further provides that QBE "shall not provide free or below-cost outsourced services to servicers, lenders, or their affiliates." *See Exhibit 12.*

34.     The National Association of Insurance Commissioners ("NAIC") also has expressed "regulatory concern" about the financial arrangements between mortgage servicers (such as Midland) and insurance providers (such as QBE). According to the NAIC's website:

> A key regulatory concern with the growing use of lender-placed insurance is "reverse competition," where the lender chooses the coverage provider and amounts, yet the consumer is obligated to pay the cost of coverage. Reverse competition is a market condition that tends to drive up prices to the consumers, as the lender is not motivated to select the lowest price for coverage since the cost is born by the borrower. Normally competitive forces tend to drive down costs for consumers. However, in this case, the lender is motivated to select coverage from an insurer looking out for the lender's interest rather than the borrower.

*Exhibit 13.*

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

36.     Plaintiff asserts her claims herein on behalf of a proposed Nationwide Class, defined as follows:

13

**Nationwide Class:** All persons who have or had a loan or line of credit secured by their property in the United States, and were charged for lender-placed hazard insurance by Midland in connection with such loan or line of credit within the applicable limitations period.

37.  Plaintiff also asserts her claims herein on behalf of a proposed Alabama Class, defined as follows:

**Alabama Class:** All persons who have or had a loan or line of credit secured by their property in the State of Alabama, and were charged for lender-placed hazard insurance by Midland in connection with such loan or line of credit on or after June 6, 2008.

38.  <u>Numerosity</u>:  The Classes are so numerous that joinder of all class members is impracticable.  Hundreds or thousands of Midland's customers fall within the proposed Class definitions.

39.  <u>Typicality</u>:  Plaintiff's claims are typical of other Class members. Among other things: (1) Plaintiff's Mortgage is typical of the mortgages of other Class members with respect to force-placed hazard insurance; (2) the form letters that Plaintiff received are typical of those received by other Class members; (3) Midland treated Plaintiff consistent with other Class members in accordance with Midland's uniform policies and practices; (4) it was typical for Defendants to receive kickbacks in connection with lender-placed hazard insurance (in the form of so-called "commissions" to FirstInsure and subsidized insurance tracking services to Midland); and (5) it was typical for Defendants to engage in the

14

foregoing manipulations of the force-placed insurance process with the assistance of QBE.

40.  <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation, including litigation regarding force-placed insurance.

41.  <u>Commonality</u>: Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes, including but not limited to:

<ol type="a">
<li>whether Midland's conduct as described herein violates the terms of its mortgage contracts;</li>
<li>whether Midland owes its customers a duty of good faith and fair dealing, and if so, whether Midland breached this duty by, <i>inter alia</i>, arranging for kickbacks to itself and FirstInsure in connection with force-placed hazard insurance;</li>
<li>whether Midland was unjustly enriched by its conduct;</li>
<li>whether FirstInsure was unjustly enriched by its conduct;</li>
<li>the appropriateness and proper form of any declaratory or injunctive relief;</li>
<li>the appropriateness and proper measure of restitution; and</li>
</ol>

g) the appropriateness and proper measure of damages and other monetary relief.

42.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

43.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.   Defendants' conduct as described in this Complaint stems from common and uniform policies and practices, resulting in unnecessary hazard insurance charges that are readily calculable from Defendants' records and other class-wide evidence.   Members of the Classes do not have an interest in pursuing separate individual actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution.   Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices.   Moreover, management of this action as a class action will not present any likely difficulties.   In the interests of justice and judicial efficiency,

16

it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

44.     Plaintiff intends to send notice to all Class members to the extent required by Rule 23. The names and addresses of the Class members are available from Defendants' records.

### FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT
**(Asserted against Midland by Plaintiff and the Classes)**

45.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

46.     Midland is the lender-in-interest to Plaintiff's mortgage and is bound by the terms of her mortgage.

47.     Plaintiff's mortgage limits the lender's discretion to charge the borrower for force-placed insurance. Specifically, Paragraph 8 of the Mortgage only allows Midland to charge the borrower for out-of-pocket costs that are actually incurred in connection with force-placed insurance. It does not allow Midland to charge the borrower gross amounts that are later rebated or refunded to Midland or its affiliates in the form of kickbacks, commissions, or other compensation (i.e., discounted insurance tracking services).

48.     In this regard (among others), Plaintiff's mortgage is typical of the mortgages of other Class members.

49.    Midland breached the mortgage contracts of Plaintiff and other Class members by arranging for kickbacks, commissions, or other compensation for itself and FirstInsure in connection with force-placed hazard insurance.

50.    These breaches were willful and not the result of mistake or inadvertence.   Midland systematically and pervasively arranged for kickbacks, commissions, and other compensation for itself and FirstInsure in connection with force-placed hazard insurance.

51.    As a direct result of this unlawful conduct, Plaintiff and the Classes have been injured, and have suffered actual damages and monetary losses, in the form of increased insurance charges.

52.    Plaintiff and the Classes are entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

## SECOND CLAIM FOR RELIEF
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Asserted against Midland by Plaintiff and the Classes)

53.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

54.    Midland owed Plaintiff and the Class members a duty of good faith and fair dealing, by virtue of Midland's contractual relationship with them.

55.    Midland breached this duty and abused any discretion it may have had by, among other things, arranging for kickbacks, commissions, and other

18

compensation for itself and FirstInsure in connection with force-placed hazard insurance.

56.     Midland willfully engaged in the foregoing conduct in bad faith, for the purpose of (1) gaining unwarranted contractual and legal advantages; (2) unfairly and unconscionably obtaining unearned revenue from Plaintiff and other Class members; and (3) shifting the cost of insurance tracking to Plaintiff and other Class members.  These practices were not authorized by the mortgage contract, were not within Midland's discretion under the contract, and were outside the reasonable expectations of Plaintiff and other Class members.

57.     The foregoing conduct was willful and not the result of mistake or inadvertence.  As set forth above, Midland systematically and pervasively arranged for kickbacks, commissions, and other compensation for itself and FirstInsure in connection with force-placed hazard insurance.

58.     As a direct result of Midland's breaches of the implied covenant of good faith and fair dealing, Plaintiff and other Class members have been injured, and have suffered actual damages and monetary losses, in the form of increased insurance charges.

59.     Plaintiff and the Classes are entitled to recover their damages and other appropriate relief for the foregoing breaches of the implied covenant of good faith and fair dealing.

### THIRD CLAIM FOR RELIEF
### UNJUST ENRICHMENT/RESTITUTION
**(Asserted against Midland and FirstInsure by Plaintiff and the Classes)**

60.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

61.     Defendants have been unjustly enriched as a result of the conduct described in this Complaint and other inequitable conduct.

62.     Midland received a benefit from Plaintiff and other Class members in the form of payment for force-placed hazard insurance, and Defendants retained a portion of these payments as kickbacks, commissions, and other compensation.

63.     The kickbacks, commissions and other compensation that Defendants received in connection with force-placed hazard insurance were not legitimately earned, and came at the ultimate expense of Plaintiff and other Class members.

64.     Retention of these payments by Defendants would be unjust and inequitable.

65.     As a result of Defendants' unjust enrichment, Plaintiff and the Classes are entitled to restitution and disgorgement of all kickbacks, commissions, and other compensation that Midland and FirstInsure received in connection with force-placed hazard insurance.

## PRAYER FOR RELIEF

66.    WHEREFORE, Plaintiff, on behalf of herself and the Classes, prays for relief as follows:

a)  Determining that this action may proceed as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure;

a)  Designating Plaintiff as class representative for the Classes;

b)  Designating Plaintiff's counsel as counsel for the Classes;

c)  Issuing proper notice to the Classes at Defendants' expense;

d)  Declaring that Midland breached its contracts with Plaintiff and the Class members;

e)  Declaring that Midland breached its duty of good faith and fair dealing to Plaintiff and the Class members;

f)  Declaring that Defendants were unjustly enriched by the conduct described in this Complaint;

g)  Declaring that Defendants acted willfully in deliberate or reckless disregard of applicable law and the rights of Plaintiff and the Classes;

h)  Awarding appropriate equitable relief, including but not limited to an injunction requiring Midland to reverse all unlawful, unfair, or otherwise improper charges for hazard insurance coverage,

prohibiting Midland and FirstInsure from earning commissions or other compensation in connection with force-placed hazard insurance, and ordering Midland to cease and desist from engaging in further unlawful conduct in the future;

i)  Awarding actual damages and interest;

j)  Awarding reasonable attorneys' fees and costs and expenses to the extent permitted by law; and

k)  Granting such other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

67.  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Classes demand a trial by jury.

Dated:   June 6, 2014

BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.

Archie I. Grubb, II (GRU105)
Andrew E. Brashier (BRA156)
218 Commerce Street
Post Office Box 4160 (36103)
Montgomery, Alabama  36104
Telephone:  (334) 269-2343
Facsimile:   (334) 954-7555
Email:     archie.grubb@beasleyallen.com
           andrew.brashier@beasleyallen.com
*AND*

22

NICHOLS KASTER, PLLP
Kai H. Richter, MN Bar No. 0296545*
Joseph C. Hashmall, MN Bar No. 0392610*
   * *pro hac vice* motions forthcoming
80 South Eighth Streeet
4600 IDS Center
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878
Email:  krichter@nka.com
         jhashmall@nka.com

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASSES