# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JANET COATES and FRANCILIA GELIN, as individuals and as representatives of the class, | **Case No: 2:14-cv-01079** |
| Plaintiffs, | |
| vs. | |
| MIDFIRST BANK d/b/a MIDLAND MORTGAGE, and FIRSTINSURE, INC., | |
| Defendants. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................3

    I.     Litigation History .....................................................................3

    II.    Settlement Negotiations ............................................................3

    III.   Overview of Settlement Terms ..................................................6

          A.    Proposed Nationwide Settlement Class ........................6

          B.    Monetary Relief ............................................................7

          C.    Prospective Relief ........................................................8

          D.    Release of Claims.........................................................9

          E.    Class Notice, Claims Process, and Settlement Administration ..9

          F.    Attorneys' Fees, Costs, and Class Representative Awards ......11

ARGUMENT ........................................................................................................11

    I.     Standard of Review .................................................................11

    II.    The Proposed Settlement More Than Satisfies the Standard for Preliminary Approval .............................................................14

          A.    The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator ......14

          B.    The Case Is Ripe for Settlement in Light of Defendants' Pre-Mediation Disclosures and the Prior Settlement in *Casey* ..........................................................................14

          C.    The Settlement Provides Significant Relief to Class Members.....................................................................15

          D.    Plaintiffs and the Settlement Class Would Face Significant Risks in the Absence of a Settlement.......................................16

              1.    Risks on the Merits ......................................17

              2.    Class Certification Risks ..............................18

           E.    The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.............................19

      F.     Plaintiffs and Their Counsel Support the Settlement ...............20

III.    The Proposed Class Notice Is Reasonable ...........................................21

IV.    Certification of the Settlement Class Is Appropriate ..........................22

      A.     The Requirements of Rule 23(a) are Met ...................................24

          1.     Numerosity ...................................................................24
          2.     Commonality ................................................................24
          3.     Typicality ....................................................................26
          4.     Adequacy .....................................................................27

      B.     The Requirements of Rule 23(b)(3) are Met ...........................28

          1.     Predominance ...............................................................28
          2.     Superiority ...................................................................30

CONCLUSION ........................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................. 23, 28

*Arnett v. Bank of America, N.A.*,
    No. 3:11-cv-01372, Dkt. No. 287 (D. Or. Sept. 18, 2014)............................. 4, 23

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) .................................................. 12-13

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988) ........................................................16

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) .................................................. 12, 17

*Bennett v. Behring Corp.*,
    76 F.R.D. 343 (S.D. Fla. 1982) ........................................................17

*Brand v. Nat'l Bank of Commerce*,
    213 F.3d 636, 2000 WL 554193 (5th Cir. Apr. 11, 2000) ...................... 25-26, 27

*Camp v. City of Pelham*,
    2014 WL 1764919 (N.D. Ala. May 1, 2014) ......................................................14

*Carnegie v. Mut. Sav. Life Ins. Co.*,
    2004 WL 3715446 (N.D. Ala. Nov. 23, 2004)........................................... 12, 14

*Casey v Citibank, N.A.*,
    No. 5:12-cv-00353, Dkt. No. 222 (N.D.N.Y Aug. 21, 2014) .............................24

*Casey v Citibank, N.A.*,
    No. 5:12-cv-00353, Dkt. No. 234 (N.D.N.Y Oct. 1, 2014)...................................4

*Casey v. Citibank, N.A.*,
    915 F. Supp. 2d 255 (N.D.N.Y. 2013) ................................................17

*Circeo-Loudon v. Green Tree Servicing, LLC,*
2014 WL 4219587 (S.D. Fl. Aug. 25 2014) ........................................................17

*Clements v. JPMorgan Chase Bank, N.A.,*
No. 3:12-cv-02179, Dkt. No. 91 (N.D. Cal. Jun. 6, 2014) ...................................24

*Cohen v. Am. Sec. Ins. Co.,*
735 F.3d 601 (7th Cir. 2013) ..............................................................................17

*Cook v. RBS Citizens, N.A.,*
No. 1:11-cv-00268, Dkt. 78 (D.R.I.) (Oct. 9, 2014) ...........................................23

*Dalton v. Cardworks Servicing, LLC,*
2010 WL 5341939 (S.D. Ala. Nov. 19, 2010) ............................................... 11-12

*Dalton v. Cardworks Servicing, LLC,*
2010 WL 5331724 (S.D. Ala. Dec. 21, 2010)............................................... 12, 13

*Decambaliza v. QBE Holdings, Inc.,*
2013 WL 5777294 (W.D. Wis. Oct. 25, 2013) ....................................................17

*Diaz v. HSBC USA, N.A.,*
No. 1:13-cv-21104, Dkt. No. 182 (S.D. Fla. Oct. 29, 2014)................................23

*Ellsworth v. U.S. Bank, N.A.,*
2014 WL 2734953 (N.D. Cal. June 13, 2014) ....................................... 19, 27, 29

*Ellsworth v. U.S. Bank, N.A.,*
908 F. Supp. 2d 1063 (N.D. Cal. 2012)...............................................................18

*Feaz v. Wells Fargo Bank, N.A.,*
745 F.3d 1098 (11th Cir. 2014) ..........................................................................18

*Fladell v. Wells Fargo Bank, N.A.,*
No. 0:13-cv-60721, Dkt. No. 259 (S.D. Fla. Oct. 29, 2014)................................23

*Fresco v. Auto Data Direct, Inc.,*
2007 WL 2330895 (S.D. Fla. May 14, 2007).......................................................13

iv

*Gen. Tel. Co. of the S.W. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................26

*Gooden v. Suntrust Mortg.*,
  2013 WL 6499250 (E.D. Cal. Dec. 11, 2013)......................................18

*Gordon v. Chase Home Fin., LLC*,
  2013 WL 436445 (M.D. Fla. Feb. 5, 2013)..................................... 18-19

*Gustafson v. BAC Home Loans Servicing, LP*,
  294 F.R.D. 529 (C.D. Cal. 2013).........................................................18

*Gutierrez v. Wells Fargo Bank, N.A.*,
  2008 WL 4279550 (N.D. Cal. Sept. 11, 2008).....................................25

*Hall v. Bank of America, N.A.*,
  No. 1:12-cv-22700, Dkt. No. 385 (S.D. Fla. Jun. 18, 2014) ................24

*Hall v. Midland Group*,
  2000 WL 1725238 (E.D. Penn. Nov. 20, 2000)...................................25

*Hofstetter v. Chase Home Fin., LLC*,
  2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) ........................... *passim*

*Holmes v. Bank of America, N.A.*,
  No. 3:12-cv-487, Dkt. No. 179 (W.D.N.C. Sept. 3, 2014)............. 4, 23

*Horton v. Metropolitan Life Ins. Co.*,
  1994 U.S. Dist. LEXIS 21395 (M.D. Fla. Oct. 25, 1994)...................23

*In re BankAmerica Corp. Secs. Litig.*,
  210 F.R.D. 694 (E.D. Mo. 2002).........................................................20

*In re Checking Account Overdraft Litig.*,
  830 F.R.D. 1330 (S.D. Fla. 2011) ................................................. 15-16

*In re Checking Account Overdraft Litig.*,
  275 F.R.D. 666 (S.D. Fla. 2011) ................................................. 25, 26

v

*In re CP Ships Ltd. Sec. Litig.*,
    578 F.3d 1306 (11th Cir. 2009) ...........................................................................13

*In re HealthSouth Corp. Sec. Litig.*,
    257 F.R.D. 260 (N.D. Ala. 2009) .......................................................................22

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001)..................................................................16

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. 1993) ................................................................... 16-17

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ................................................................... 12, 20

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) .......................................................................20

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) ...........................................................................30

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984) .........................................................................26

*Kunzelmann v. Wells Fargo Bank, N.A.*,
    2013 WL 139913 (S.D. Fla. Jan. 10, 2013).......................................................19

*Lane v. Wells Fargo Bank, N.A.*,
    2013 WL 3187410 (N.D. Cal. June 21, 2013) ...................................... 19, 26, 29

*Leghorn v. Wells Fargo Bank, N.A.*,
    950 F. Supp. 2d 1093 (N.D. Cal. 2013).......................................................... 17-18

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
    863 F. Supp. 2d 928 (N.D. Cal. 2012)................................................................18

*Montanez v. HSBC Mortg. Corp. (USA)*,
    876 F. Supp. 2d 504 (E.D. Pa. 2012)................................................................18

*Montoya v. PNC Bank, N.A.*,
   2014 WL 4248208 (Aug. 27, 2014) ....................................................18

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010) .........................................................................13

*Newbridge Networks Sec. Litig.*,
   1998 WL 765724 (D.D.C. Oct. 23, 1998).............................................16

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .........................................................................21

*Pulley v. JPMorgan Chase Bank, N.A.*,
   No. 12-CV-60936, Dkt. No. 84 (S.D. Fla. Nov. 25, 2013) ...................24

*Rapp v. Green Tree Servicing, LLC*,
   2014 WL 3846032 (D. Minn. Aug. 5, 2014).........................................18

*Robinson v. Countrywide Credit Indus.*,
   1997 WL 634502 (E.D. Penn. Oct. 8, 1997) ................................ 26, 27, 28, 29-30

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs.*, Inc.,
   601 F.3d 1159 (11th Cir. 2010) ..........................................................28

*Simpkins v Wells Fargo Bank, N.A.*,
   2013 WL 4510166 (S.D. Ill. Aug 26, 2013).........................................18

*Singleton v. Wells Fargo Bank, N.A.*,
   2013 WL 5423917 (N.D. Miss. Sept. 26, 2013) ...................................17

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ...............................................................23

*Ulbrich v. GMAC Mortgage*,
   No. 0:11-cv-62424, Dkt. No. 105 (S.D. Fla. May 10, 2013) ................24

*Warren v. City of Tampa*,
   693 F. Supp. 1051 (M.D. Fla. 1988) ...................................................20

*White v. Nat'l Football League,*
  822 F. Supp. 1389 (D. Minn. 1993) ....................................................................23

*Williams v. Mowhawk Indus., Inc.,*
  568 F.3d 1350 (11th Cir. 2009) ................................................................... 24-25

*Williams v. Nat. Sec. Ins. Co.,*
  237 F.R.D. 685 (M.D. Ala. 2006) ......................................................................12

*Williams v. Wells Fargo Bank, N.A.,*
  2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ......................................................18

*Williams v. Wells Fargo Bank, N.A.,*
  280 F.R.D. 665 (S.D. Fla.  2012................................................................... *passim*

## Rules

Fed. R. Civ. P. 23 .............................................................................................. *passim*

## Other Authorities

4 NEWBERG ON CLASS ACTIONS § 11:25 ...................................................................13

4 NEWBERG ON CLASS ACTIONS § 11:41 ...................................................................13

5 MOORE'S FEDERAL PRACTICE § 23.83(a) ................................................................13

MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed. 1995) ......................................12

MANUAL FOR COMPLEX LITIGATION § 30.42 (3d ed. 1995) ......................................14

## INTRODUCTION

Plaintiffs Janet Coates and Francilia Gelin ("Plaintiffs") submit this memorandum of law in support of their motion for preliminary approval of their Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") with MidFirst Bank, including its Midland Mortgage division ("Midland"), and Firstinsure, Inc. ("Firstinsure") (collectively, the "MidFirst Defendants"). The Settlement Agreement is attached as Exhibit 1 to the Declaration of Kai Richter ("Richter Decl."), and resolves Plaintiffs' putative class action claims against the MidFirst Defendants relating to lender-placed hazard insurance ("LPHI").

Under the terms of this Settlement, Defendants will establish a settlement fund of two million dollars ($2,000,000) for the benefit of the Settlement Class, which will not revert to the MidFirst Defendants at any time. After any court-approved deductions for settlement administration costs, named plaintiff service awards, and attorneys' fees and expenses, the fund will be distributed *pro rata* to Settlement Class members in proportion to the amount of LPHI premiums that were charged to their accounts by Midland.

The Settlement Agreement also provides for important prospective relief. Specifically, the Settlement prohibits the MidFirst Defendants and their affiliates from accepting commissions or other consideration in connection with LPHI for a period of three years.

1

For the reasons set forth below, the Settlement is fair, reasonable and adequate, and merits preliminary approval so the proposed Notice of Settlement ("Class Notice") can be sent to the Settlement Class. Among other things:

- The Settlement was vigorously negotiated at arm's length with the assistance of an experienced mediator, retired U.S. District Judge Wayne Andersen of JAMS;

- The Settlement provides for significant monetary and prospective relief;

- There will be ***no reversion of any funds*** in the Settlement Fund to the MidFirst Defendants;

- The Settlement is not conditioned on the Court's approval of Class Counsels' attorneys' fees or costs, or any service award to the named Plaintiffs;[1]

- The release in the Settlement Agreement is narrowly-tailored to apply only to claims that arose during the Class Period relating to LPHI;

- The Settlement Agreement provides for direct notice to Settlement Class Members via first-class mail;

- The Settlement provides for the establishment of a toll-free telephone number and website dedicated to the Settlement; and

- The Settlement provides the opportunity for Settlement Class Members to opt-out or object to the Settlement within sixty days of notice being mailed.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Class Notice and

---

[1] Class Counsel consists of Nichols Kaster, PLLP and Beasley, Allen, Crow, Methvin, Portis & Miles, P.C..

authorizing distribution of the Notice via first-class mail; (3) certifying the proposed Settlement Class; (4) designating Plaintiffs as class representatives and Plaintiffs' Counsel as Class Counsel; and (5) scheduling a final approval hearing. This motion is not opposed by the MidFirst Defendants as co-parties to the Settlement.

## BACKGROUND

### I. LITIGATION HISTORY

Plaintiff Janet Coates filed this action on June 6, 2014 on behalf of herself and other similarly-situated putative class members. *ECF No.* 1. In summary, Coates alleged that Midland arranged for improper kickbacks to its affiliate, Firstinsure, in the form of unearned "commissions" on LPHI. *Id., ¶¶ 1-3, 20-22.* Based on this conduct, Coates asserted claims against the MidFirst Defendants for breach of contract (against Midland); breach of the covenant of good faith and fair dealing (against Midland); and unjust enrichment (against Midland and Firstinsure). *Id., ¶ 4 & Counts 1-3.* After this action was filed, Coates' counsel also was retained by Francilia Gelin, who has substantially similar claims as Coates. Accordingly, Plaintiffs filed an Amended Complaint on January 2, 2015 adding Gelin as second named Plaintiff. *See ECF No. 14.*

### II. SETTLEMENT NEGOTIATIONS

After the action was filed, and prior to the filing of the Amended Complaint, the Parties began exploring a possible settlement. *Richter Decl., ¶ 14.* These early

settlement negotiations were facilitated by the fact that Plaintiffs' counsel had previously litigated and resolved another lender-placed insurance ("LPI") case against the MidFirst Defendants, *Casey v CitiBank N.A, et. al.*, 5:12-cv-00353 (N.D.N.Y). In that case, which related to lender-placed flood insurance, Plaintiffs' counsel and the MidFirst Defendants, who were represented by the same counsel as in this action, reached a class-wide settlement after extensive discovery and adversarial litigation. That settlement recently received final approval from the *Casey* court on October 1, 2014. *See Casey*, Dkt No. 234.

In addition, the Parties were well aware of the strengths and weaknesses of their positions on the merits and on class certification, as when this suit was filed a large body of case law already existed that addressed LPI claims like those here on dispositive motions and class certification, with mixed results. Furthermore, the Parties were aware of several other recent settlements and decisions involving LPI. For example, in two other cases against Bank of America involving lender-placed flood insurance and wind insurance, the same plaintiff counsel (Nichols Kaster, PLLP) and defense counsel (Goodwin Proctor, LLP) reached nationwide settlements that received court approval.[2] In other LPI cases, class action settlements also have been approved. *See infra* at 23 n. 9.

---

[2] *See Arnett v. Bank of America, N.A.*, No. 3:11-cv-01372, Dkt. No. 287 (D. Or. Sept. 18, 2014) (final approval order); *Holmes v. Bank of America, N.A.*, No. 3:12-cv-487, Dkt. No. 179 (W.D.N.C. Sept. 3, 2014) (preliminary approval order).

With the benefit of these prior settlements and decisions, the Parties agreed to mediate on September 24, 2014 with the Honorable Wayne R. Andersen, former District Court Judge of the Northern District of Illinois and currently a mediator with JAMS. Judge Andersen was chosen because of his extensive experience mediating complex cases, including class action cases, and because he had assisted in the successful resolution of the *Casey* matter. *Richter Decl., ¶ 16.*

Prior to mediation, Plaintiffs sought and obtained discovery from the MidFirst Defendants for settlement purposes, which allowed Plaintiffs to negotiate a settlement on an informed basis. *Richter Decl., ¶ 19.* For example, the MidFirst Defendants produced several hundred pages of documents to Plaintiffs, including (among other things) Midland's hazard insurance policies and procedures, and relevant contracts relating to LPHI and hazard insurance tracking. *Id, ¶ 20.* In addition, the MidFirst Defendants produced aggregate class data to Plaintiffs, so that Plaintiffs' counsel could conduct their own independent damages analysis. *Id., ¶ 21.* This class data included information regarding the number of borrowers who were charged for LPHI during the relevant period, the premiums charged to those borrowers for LPHI, and the commissions that were paid to Firstinsure in connection with LPHI. *Id.*

After Plaintiffs' counsel analyzed the information and data produced by the MidFirst Defendants, the Parties submitted mediation statements and participated

in a mediation session with Judge Andersen.  *Id., ¶ 16, 19.*  That mediation lasted a full day, with Judge Andersen serving as an intermediary between the Parties.  *Id.* At all times, the settlement discussions were conducted at arm's length.  *Id.*

Although the Parties were unable to reach an agreement by the end of the mediation session, they made sufficient progress that they elected to continue their negotiations.  *Id., ¶ 18.*  These ongoing negotiations also were facilitated by Judge Andersen.  *Id.*  After several days of further negotiations, the Parties were able to reach agreement on all material settlement terms, and then reached the comprehensive Settlement Agreement that is the subject of the present motion.  *Id.*

## III.   OVERVIEW OF SETTLEMENT TERMS

### A.    Proposed Nationwide Settlement Class

The Settlement Agreement calls for certification of a nationwide Settlement Class.  The Settlement Class is defined as follows:

> All persons with a mortgage loan or line of credit owned or serviced by Midland who were charged for LPHI by the MidFirst Defendants during the Class Period.

*Settlement Agreement, ¶ 2(dd).*

For purposes of Settlement, the Class Period runs from June 6, 2008 (six years before the Complaint was filed) through the date of preliminary approval of the Settlement.  *Id. at ¶ 2(k).*    According to the class data produced by the

MidFirst Defendants, the Settlement Class consists of approximately 40,000 borrowers. *Richter Decl., ¶ 4.*

**B.    Monetary Relief**

Under the Settlement, members of the Settlement Class who were charged for LPHI (and not subsequently refunded in full) will have the opportunity to receive a refund of a portion of the amounts that they were charged for LPHI during the Class Period, upon submitting a Claim Form.[3] *Settlement Agreement, ¶ 18.* Specifically, the Settlement requires the MidFirst Defendants to establish a common fund of two million dollars ($2,000,000), which will not revert to Defendants at any time. *Id at ¶ 16.* After any court-approved deductions for settlement administration costs, named plaintiff service awards, and attorneys' fees and expenses, the fund will be distributed *pro rata* to Settlement Class Members who file timely and valid claims ("Eligible Claimants"), in proportion to their Settlement Shares under the Settlement Agreement. *Id at ¶¶ 17, 24.*

For purposes of Settlement, Eligible Claimants will be allocated Settlement Shares equal to 10% of the net amount of premiums that Midland charged to such Claimants for LPHI during the Class Period, provided that the indebtedness on the Claimant's residence has not been compromised or discharged in bankruptcy. *Id at ¶ 24.* Depending on how many Claim Forms are submitted and the total value of

---

[3] The proposed Claim Form can be found at Exhibit 2 to the Settlement Agreement.

all claims, the *pro rata* Settlement Payments that Eligible Claimants receive may be more or less than their Settlement Shares.

Eligible Claimants who do not have an active mortgage escrow account with Midland will receive their Settlement Payment by check. *Id. at ¶ 25.*[4]   All other Eligible Claimants with active mortgage escrow accounts who were charged for LPHI will receive their Settlement Payment via escrow credit or check, at Midland's election. *Id.*

## C.    Prospective Relief

The Settlement also provides for significant prospective relief. Specifically, for a period of at least three years, the Settlement prohibits the MidFirst Defendants and their affiliates from accepting commissions or other compensation in connection with any LPHI policy issued more than 90 days after the Effective Date of the Settlement. *Id. at ¶ 13.* Because the MidFirst Defendants still service many Settlement Class Members' mortgages, this change in practice will result in additional benefits to the Settlement Class.[5]

---

[4] Eligible Claimants who are issued their Settlement Payment by check will have 180 days to cash their settlement check (the "Payment Period"). *Id. at ¶ 32.* Any checks that remain uncashed following the Payment Period will be paid to the Consumer Credit Counseling Service of Central Oklahoma and the Neighborhood Services Organization, or another organization approved by the Court. *Id.*

[5] Because Midland is a regulated enterprise, the Settlement Agreement provides that this prospective relief is subject to conflicts with regulatory requirements. *See Settlement Agreement, ¶ 14.* The MidFirst Defendants have affirmatively represented in the Settlement Agreement that they are not presently aware of any such conflicts. *Id.*

**D.  Release of Claims**

In exchange for the foregoing monetary and prospective relief, Settlement Class Members who do not opt out of the Settlement will release Midland and Firstinsure (and their affiliates, agents, and insurance vendors) from all claims asserted in the Action and any related claims which could be asserted against them in connection with LPHI on mortgage loans serviced by Midland during the Class Period. *Settlement Agreement, ¶¶ 56-57.*

**E.  Class Notice, Claims Process, and Settlement Administration**

Settlement Class members will be sent notice of the Settlement via first-class mail. *Settlement Agreement, ¶ 42.*[6]  A copy of the proposed Class Notice is attached as Exhibit 3 to the Settlement Agreement.  This Notice includes, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) instructions for submitting a claim and the deadline for doing so; (5) a disclosure of the release of claims; (6) an explanation of Settlement Class members' opt-out rights, a date by which Settlement Class members must opt out, and information regarding how to do so; (7) instructions as to how to object to the Settlement and a date by which

---

[6] The Class Notices will be sent to Settlement Class members' last known mailing address (as reflected in Midland's records).  *Settlement Agreement, ¶¶ 44-45.*  In the event that a Class Notice is returned as undeliverable, the Claims Administrator or Class Counsel will conduct an automated skip trace in an effort to locate a valid address, and re-mail the class notice if a valid address is found.  *Id. at ¶ 46.*

Settlement Class members must object; (8) the date, time, and location of the final approval hearing; and (9) the internet address for the settlement website and the toll-free number from which Settlement Class members may obtain additional information about the Settlement; (10) contact information for the lead law firm representing the Settlement Class; and (11) the amount that Class Counsel may seek in attorneys' fees and expenses, as well as the proposed named Plaintiff service awards. *See Settlement Agreement, Ex. 3.*

Settlement Class members will have 60 days from the date that Class Notices are mailed to object or opt out of the settlement. *Settlement Agreement, ¶¶ 2(w), 50-51.* To the extent that Class members wish to submit a claim, they may also do so up to 60 days after the Notices are mailed. *Id. at ¶¶ 2(e), 21.* Settlement Class members will have several options for submitting their claims (*i.e.*, via mail, fax, or email), *id. at ¶ 20*, and will need to submit only one Claim Form regardless of how many LPHI placements they were subject to during the Class Period. *Id. at ¶ 19.* If a Claim Form is deemed invalid for any reason, Class Counsel may follow up with the relevant Settlement Class Member to cure the deficiency. *Id. at ¶ 23.* Any defective Claim Form may be cured and will be accepted as timely if the defect is resolved within 30 days after the end of the claim period. *Id.*

There also will be a settlement website from which Settlement Class members may download copies of the Settlement Agreement, Class Notice, Claim

Form, Amended Complaint, approval motion, and Plaintiffs' motion for attorneys' fees, expenses, and class representative compensation. *Id. at ¶ 48.* In addition, there will be a toll-free number that Settlement Class Members may call for more information about the Settlement. *Id. at ¶ 47.*

### F.    Attorneys' Fees, Costs, and Class Representative Awards

The Settlement provides that Class Counsel will file a separate motion for attorneys' fees and expenses pursuant to Fed. R. Civ. P. 23(h), contemporaneous with or prior to the motion for final settlement approval. Class Counsel have agreed not to seek an award of attorneys' fees exceeding 25% of the Gross Settlement Fund ($500,000), plus Class Counsel's out-of-pocket expenses and the expenses of the Claims Administrator.[7] *Id. at ¶¶ 38, 40.* In addition, the Settlement provides that modest service awards of up to $5,000 may be sought for the named Plaintiffs, subject to the Court's approval, to compensate these individuals for their time and efforts in connection with this action. *Id. at ¶ 39.*

## ARGUMENT

## I.    STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a

---

[7] After soliciting bids, the parties have jointly selected Dahl Administration to be the Claims Administrator. *Richter Decl., ¶ 30.*

two-step process. *Dalton v. Cardworks Servicing, LLC*, 2010 WL 5341939, at \*2 (S.D. Ala. Nov. 19, 2010), *report and recommendation adopted*, 2010 WL 5331724 (S.D. Ala. Dec. 21, 2010); MANUAL FOR COMPLEX LITIGATION § 30.41, at 236 (3d ed. 1995). First, counsel submit the proposed terms of the settlement to the court, and the court makes a preliminary fairness evaluation. *Id.* Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement. *Id.*

The decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Carnegie v. Mut. Sav. Life Ins. Co.*, 2004 WL 3715446, \*17 (N.D. Ala. Nov. 23, 2004). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Carnegie*, 2004 WL 3715446, at \*17. Indeed, the policy favoring settlement is especially relevant in the class action context, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit that the class could hope to obtain. *See, e.g., Williams v. Nat. Sec. Ins. Co.*, 237 F.R.D. 685, 694 (M.D. Ala. 2006) ("Settlement is generally favored as a means of resolving class-action lawsuits.");

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citation omitted); *see also* 4 NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002) (citing cases).

At the final approval stage, the Eleventh Circuit has identified six factors that courts should consider in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e):

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1318 (11th Cir. 2009), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010); *Dalton*, 2010 WL 5331724 at *6. At the preliminary approval stage, however, the Court is not required to answer the ultimate question of whether the settlement is fair, reasonable, and adequate. *See* 5 MOORE'S FEDERAL PRACTICE § 23.83[a], at 23-336.2 to 23-339. Rather, the Court simply makes an initial determination concerning whether the settlement "appears to fall within the range of possible approval[.]" 4 NEWBERG ON CLASS ACTIONS § 11:25; *see also Fresco v. Auto Data*

*Direct, Inc.*, 2007 WL 2330895, at \*4 (S.D. Fla. May 14, 2007).  This standard is more than satisfied in this case.

## II.   THE PROPOSED SETTLEMENT MORE THAN SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

### A.   The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator

As an initial matter, the proposed Settlement is the product of arm's length negotiations that were overseen by an experienced and impartial mediator.  This fact alone weighs in favor of approval.  See *Carnegie,* 2004 WL 3715446 at \*18 (concluding that there was no collusion when "settlement was negotiated by capable, experienced counsel, in good faith, and at arm's length, following an extensive, lengthy, and difficult process supervised by an experienced mediator."); *Camp v. City of Pelham*, 2014 WL 1764919, at \*5 (N.D. Ala. May 1, 2014).

Moreover, the counsel involved in the negotiations are experienced in handling class action litigation relating to LPI, and are clearly capable of assessing the strengths and weaknesses of their respective positions.  *See Richter Decl., ¶¶ 23-29.*  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  MANUAL FOR COMPLEX LITIGATION § 30.42 (3d ed. 1995).  That is precisely the situation presented here.

### B.   The Case Is Ripe for Settlement in Light of Defendants' Pre-Mediation Disclosures and the Prior Settlement in *Casey*

Although this case was settled shortly after it was filed, the Parties were well-informed of the relevant facts and the value of the claims at issue, for three important reasons. Underline First, the MidFirst Defendants provided substantial pre-mediation disclosures to Class Counsel (including both relevant documents and class data), which allowed Class Counsel to evaluate liability, damages and Defendants' probable defenses. Second, Class Counsel had the advantage of having previously litigated a substantially similar case against the same Defendants and the same defense counsel. Finally, the Parties were aware of numerous other cases involving LPI, and the ultimate resolution of those cases either by litigation or by settlement. Thus, the negotiations clearly were well informed.

## C. The Settlement Provides Significant Relief to Class Members

As detailed above, the Settlement provides substantial relief to Settlement Class Members. The Settlement requires the MidFirst Defendants to pay $2 million to resolve the claims at issue, and none of that amount will revert to the MidFirst Defendants under any circumstances. Assuming a 10% - 20% claims rate (consistent with other settlements in which Class Counsel have been involved), this represents an average gross recovery of approximately $250 to $500 per claiming class member (prior to deductions for any attorneys' fees, costs, and class representative service awards approved by the Court). *See Richter Decl., ¶ 9.* This is on par with other settlements, *id.*, and falls well within the range of

reasonableness for settlement purposes (especially in light of the risks of litigation discussed further below). *See In re Checking Account Overdraft Litig.*, 830 F.R.D. 1330, 1346 (S.D. Fla. 2011) (recovery of 9 percent was reasonable); *Newbridge Networks Sec. Litig.,* 1998 WL 765724, *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly 6 to 12 percent of a potential recovery ... seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *accord*, *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

Moreover, the Settlement also provides significant prospective relief to the Settlement Class. Specifically, the MidFirst Defendants will not receive any commissions or other compensation in connection with LPHI for a period of at least three years. This prospective relief will provide many Settlement Class Members with additional ongoing savings.

### D. Plaintiffs and the Settlement Class Would Face Significant Risks in the Absence of a Settlement

If Plaintiffs had chosen to continue to litigate their claims, a successful outcome was not guaranteed. *See Richter Decl., ¶ 9.* As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

*Id.* at 560 (internal brackets and quotation marks omitted); *see also Bennett v. Behring Corp.*, 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984).

Here, Plaintiffs and the other class members would have faced significant risks both with respect to class certification and on the merits. These risks further demonstrate the reasonableness of the Settlement in this case.

### 1.     Risks on the Merits

While Plaintiffs believe their claims are strong, they would have faced significant risks in litigating their claims. Specifically, with respect to Plaintiffs' claims regarding allegedly unlawful commissions, certain courts have dismissed these types of claims in other LPI cases. *See Cohen v. Am. Sec. Ins. Co.,* 735 F.3d 601, 608 (7th Cir. 2013); *Circeo-Loudon v. Green Tree Servicing, LLC*, 2014 WL 4219587, at *2-5 (S.D. Fl. Aug. 25 2014); *Decambaliza v. QBE Holdings, Inc.*, 2013 WL 5777294, at *5-9 (W.D. Wis. Oct. 25, 2013); *Singleton v. Wells Fargo Bank, N.A.*, 2013 WL 5423917, at *2 (N.D. Miss. Sept. 26, 2013). Although other

courts have allowed such claims to proceed past a motion to dismiss,[8] it is uncertain how the Eleventh Circuit would rule on the merits of these claims. Indeed, the Eleventh Circuit recently expressed skepticism of such claims in a LPI case arising in the Southern District of Alabama. *See Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1111 (11th Cir. 2014) ("We agree with the Seventh Circuit that 'simply calling a commission a kickback doesn't make it one.'"). Moreover, another district court in this Circuit has made note of the legal "headwinds" confronting plaintiffs in LPI cases as a result recent case law developments. *See Montoya v. PNC Bank, N.A.*, 2014 WL 4248208, at *1 (Aug. 27, 2014). By entering into a settlement now, Plaintiffs have hedged against these litigation risks and locked in valuable benefits for the Settlement Class.

## 2. Class Certification Risks

In addition to these risks on the merits, Plaintiffs would have faced risks on class certification as well. In a number of recent LPI cases, class certification has been denied. *See Rapp v. Green Tree Servicing, LLC*, 2014 WL 3846032 (D. Minn. Aug. 5, 2014); *Gooden v. Suntrust Mortg.,* 2013 WL 6499250, at *9 (E.D. Cal. Dec. 11, 2013); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529

---

[8] *See, e.g.*, *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255, 267 (N.D.N.Y. 2013); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1115 (N.D. Cal. 2013); *Simpkins v Wells Fargo Bank, N.A.*, 2013 WL 4510166, at *7 (S.D. Ill. Aug 26, 2013); *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1088 (N.D. Cal. 2012); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 955-61 (N.D. Cal. 2012); *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 513 (E.D. Pa. 2012); *Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346, at *2, *4 (S.D. Fla. Oct. 14, 2011).

(C.D. Cal. 2013); *Gordon v. Chase Home Fin., LLC*, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013); *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013). In other LPI cases, the classes that have been certified have been limited to single-state classes. *See Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410 (N.D. Cal. June 21, 2013) (certifying class of California borrowers); *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012) (certifying class of Florida borrowers). Thus, even though Plaintiffs' Counsel had success certifying a national class in *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011), and obtained certification of certain multi-state classes spanning 40 states in *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014), it was not guaranteed that the Court would have certified a nationwide class (or any class) on a contested class certification motion in this case. By settling the case at this juncture, and obtaining the MidFirst Defendants' consent to nationwide class certification, Plaintiffs wisely have sought to assure class-wide relief to the broadest possible set of class members.

### E.     The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties

Aside from the these risks, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to class members (at best), and might have resulted in no relief to class members at all. In the absence of a

settlement, the Parties would have engaged in Rule 12 motion practice, followed by formal discovery, expert reports, class certification motion practice, summary judgment motions, and a trial on the merits.  Moreover, even if Plaintiffs had won certification of a nationwide class and litigated the class claims to a successful conclusion, it is likely that the MidFirst Defendants would have appealed any judgment entered against them, resulting in further expense and delay.

Complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive."  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  By entering into a settlement now, Plaintiffs saved precious time and costs, and avoided the risks associated with further litigation.

### F.      Plaintiffs and Their Counsel Support the Settlement

Both Plaintiffs and their counsel have submitted declarations in support of the proposed settlement.  *See Coates Decl.; Gelin Decl.; Richter Decl.*  The Court should "hesitate to substitute its own judgment for that of counsel."  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 691 (N.D. Ga. 2001) (quoting *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988)); *see also In re BankAmerica Corp. Secs. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002).  There is no reason to believe that absent class members will view the settlement differently than Plaintiffs and their counsel, and even if isolated class members are not fully

satisfied with the settlement terms after receiving notice of the settlement, they will have the opportunity to opt-out or object.

## III. THE PROPOSED CLASS NOTICE IS REASONABLE

In addition to reviewing the substance of the parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here. Under the Settlement Agreement, each member of the Settlement Class will be sent a notice of the proposed settlement via first-class mail, informing them of the terms of the Settlement and their right to opt-out or object. *See Richter Decl., Ex. 1 at Ex. 3.* This type of notice is presumptively reasonable, and satisfies the requirements of due process. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985) (the procedure "where a fully descriptive notice is sent by first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process").

The content of the notice is also reasonable and appropriate. Under Rule 23(c)(2)(B), the notice must clearly and concisely state:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)    that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Class Notice includes all of this information. *See Richter Decl., Ex. 1 at Ex. 3.* In addition, the Class Notice clearly spells out the terms of the proposed Settlement, provides a website address where class members can obtain a copy of the Settlement Agreement and other relevant documents, and includes a phone number that class members may call if they have any questions. *Id.* Accordingly, this Court should approve the Class Notice, as both the content of the notice and the method of dissemination are reasonable.

## IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

In addition to approving the proposed Settlement and Class Notice, this Court should certify the proposed Settlement Class. Whether to certify a class action rests within the sound discretion of the Court. *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 270 (N.D. Ala. 2009). However, in the context of a settlement, class certification is more easily attained because the court need not

inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Likewise, variations in state laws are "irrelevant to certification of a [nationwide] settlement class" because the settlement eliminates the burden of establishing the elements of liability under disparate laws. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) (en banc) (citing cases). Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.*, 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

This is borne out by an examination of other LPI cases in which class settlements have been reached. Although the case law on contested class certification motions for litigation purposes has been mixed, *see supra* at 18-19, classes have been certified for settlement purposes in at least ten other LPI cases.[9]

---

[9] *See, e.g., Fladell v. Wells Fargo Bank, N.A.*, 0:13-cv-60721, Dkt. No. 259 (S.D. Fla. Oct. 29, 2014) (final approval order); *Diaz v. HSBC USA, N.A.*, 1:13-cv-21104, Dkt. No. 182 (S.D. Fla. Oct. 29, 2014) (final approval order); *Cook v. RBS Citizens, N.A.*, No. 1:11-cv-00268, Dkt. 78 (D.R.I.) (Oct. 9, 2014) (final approval order); *Arnett*, Dkt. No. 287 (D. Or. Sept. 18, 2014) (final approval order); *Holmes*, Dkt. No. 179 (W.D.N.C. Sept. 3, 2014) (preliminary approval order);

The same result should apply here.

## A.    The Requirements of Rule 23(a) are Met

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Plaintiffs satisfy all four requirements as set forth below.

### 1.    Numerosity

Rule 23(a)(1) requires Plaintiffs to show that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable.  Here, there are over 40,000 members of the proposed Settlement Class.  *See supra* at 6.  Thus, the numerosity standard is easily satisfied.  *See Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate").

### 2.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  In order to satisfy this requirement, there must be "at least one issue whose resolution will affect all or a significant number of the putative class members."  *Williams v. Mowhawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir.

*Casey v Citibank, N.A.*, No. 5:12-cv-00820, Dkt. No. 222 (N.D.N.Y., Aug. 21, 2014) (final approval order); *Hall v. Bank of America, N.A.*, No 1:12-cv-22700, Dkt. No. 385 (S.D. Fla. Jun. 18, 2014) (preliminary approval order); *Clements v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-02179, Dkt. No. 91 (N.D. Cal. Jun. 6, 2014) (final approval order); *Pulley v. JPMorgan Chase Bank, N.A.*, No. 12-CV-60936, Dkt. No. 84 (S.D. Fla. Nov. 25, 2013) (final approval order); *Ulbrich v. GMAC Mortgage*, No. 0:11-cv-62424, Dkt. No. 105 (S.D. Fla. May 10, 2013) (final approval order).

2009) (internal quotation marks and citation omitted).

"The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (internal brackets and quotations marks omitted); *see also Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550, at *17 (N.D. Cal. Sept. 11, 2008) (commonality satisfied where "[t]he challenged practice is a standardized one applied on a routine basis to all customers" by the bank). Here, there are common issues regarding (among other things): (1) whether the commissions that were paid to Midland's affiliate, Firstinsure, on LPHI constituted an unlawful kickback; and (2) whether those commission payments inflated LPHI charges to class members. These common issues support certification of the proposed Settlement Class. *See Hall*, 2000 WL 1725238, at *1 & *3 (holding that there were "common questions of fact and law" where "[t]he essence of plaintiff's allegations is that defendant [] engaged in the forced placement of hazard insurance through agencies owned by affiliates . . . and debited the affected mortgagors' escrow accounts in the amount of excessive and unauthorized premiums charged by the affiliates which received commissions for these placements.").[10]

---

[10] *Accord, Brand v, Nat'l Bank of Commerce*, 213 F.3d 636, 2000 WL 554193, at *1 (5th Cir. Apr. 11, 2000) (finding commonality requirement was satisfied where plaintiff identified several common issues, including whether the defendant bank "charged borrowers more than the cost of

### 3. Typicality

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. at *3 n.8 (citation omitted). Typicality is satisfied where the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984).

Here, Plaintiffs are typical of the Settlement Class that they seek to represent, as they had mortgages that were serviced by Midland, were charged for LPHI by Midland, and were subject to the same alleged LPI practices as other class members. Accordingly, Rule 23(a)(3) is also satisfied.[11]

---

the insurance under a system of kickbacks from the insurer"); *Lane*, 2013 WL 3187410, at *8 (commonality and predominance requirements satisfied where plaintiffs alleged that Wells Fargo "engaged in a common scheme to force-place insurance on borrowers whose individual insurance had lapsed, and that [Wells Fargo] did so in a manner designed to maximize the kickbacks it received from captive insurance providers QBE and ASIC"); *Williams*, 280 F.R.D. at 672 (certifying class of borrowers where "[t]he essence of th[e] case, as alleged, [was] a common scheme to systematically, and without any individual consideration, force-place insurance at an excessive rate to every person whose self-placed property insurance had lapsed" and earn a commission for Wells Fargo's affiliate); *Hofstetter*, 2011 WL 1225900, at *15 (certifying subclass of borrowers to pursue claim that defendant acted unlawfully "by generating commission income through self-dealing"); *Robinson v. Countrywide Credit Indus.*, 1997 WL 634502, at *3 (E.D. Penn. Oct. 8, 1997) ("There exist common issues of law or fact, such as whether [the defendants] purchased unauthorized coverage, inflated the amount of forced placed insurance, and whether [they] did so to gain improperly inflated commissions.").

[11] *See, e.g., Hofstetter*, 2011 WL 1225900 at *9 (finding that typicality was satisfied because the named plaintiffs' "claims likely differ from those of other class members only as to damages and other immaterial factual details"); *Brand*, 213 F.3d 636, 2000 WL 554193, at *1 ("[Plaintiff] was subjected to force-placed collateral protection insurance by [the bank]. If [the bank]

### 4.    Adequacy

The requirement of adequate representation addresses two issues: (1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and (2) whether the named plaintiffs have interests antagonistic to those of the rest of the class.  *Williams*, 280 F.R.D. at 673.

Here, Plaintiffs' counsel have extensive experience litigating other class action cases relating to LPI.  *See Richter Decl., ¶¶ 23-29.*  Plaintiffs' counsel previously were appointed class counsel for litigation classes in *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) and *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014).  *Id., ¶¶ 25-26.*  In addition, Plaintiffs' counsel have been appointed class counsel for settlement classes in numerous cases, including the *Casey* action involving the MidFirst Defendants.  *Id., ¶ 27.*  Thus, Plaintiffs' counsel clearly possess the requisite qualifications and experience.

Moreover, "[t]here is nothing to indicate that [Plaintiffs'] interests are in conflict with any members of the class."  *Brand*, 2000 WL 554193, at *2; *see also*

---

systematically overcharged for premiums to all class members, then [plaintiff's] claims will be the same as those of the other class members with regard to such practices."); *Robinson*, 1997 WL 634502, at *3 ("[T]he claim of [plaintiff], an escrowed borrower with forced placed insurance, is typical because his claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and is based on the same legal theory.") (internal brackets and quotation marks omitted); *Williams*, 280 F.R.D. at 673 (holding that the named plaintiffs were "typical of the class in that they were both charged and either paid or still owe Wells Fargo for the alleged excessive and inflated premiums for the force-placed property insurance").

*Robinson*, 1997 WL 634502, at *3.  For the reasons discussed above, Plaintiffs' interests are consistent with, and not antagonistic to, the interests of the other Settlement Class members.  Thus, the adequacy requirement is also met.

## B.     The Requirements of Rule 23(b)(3) are Met

In addition to satisfying Rule 23(a), parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3).  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Here, Plaintiffs seek certification under Rule 23(b)(3), which allows a class action to be maintained if: (1) questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  Both of these criteria are met here.

### 1.     Predominance

The predominance requirement of Rule 23(b)(3) requires that "[c]ommon issues of fact and law … have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs.*, Inc., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  This requirement is "readily met" in consumer cases.  *Amchem*, 521 U.S. at 624.

Predominance is satisfied here, particularly given *Amchem*'s relaxed standard in the settlement context. The questions relating to the alleged commissions scheme predominate over any individualized issues. Midland's affiliate, Firstinsure, received a commission on each LPHI placement irrespective of individual borrower circumstances, and the question of whether those commissions were lawful is a classic class-wide issue that is appropriate for resolution in one stroke. *See e.g., Williams*, 280 F.R.D. 665, 670 ("The determination of the truth or falsity of the Plaintiffs' allegations that Wells Fargo and QBE engaged in a scheme to lender-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Courts in other LPI cases have found predominance and have certified classes on just this basis, even outside the settlement context. *Id.; see also Ellsworth*, 2014 WL 2734953, at *19; *Lane,* 2013 WL 3187410, at *8; *Williams*, 280 F.R.D. at 674-75; *Hofstetter*, 2011 WL 1225900 at **14-15; *Robinson*, 1997 WL 634502, at *4 ("We conclude that common class issues of law and fact predominate over any individual issues in this case. While individual issues are present, especially in the context of damages, they do not predominate. Rather, the central issues revolve around whether the form contracts authorized placement of the type of insurance purchased and whether Countrywide knowingly purchased

inflated or expensive policies to generate commissions."). The requirement is certainly met in the settlement context.

### 2. Superiority

The superiority requirement is also met. Resolving borrowers' claims together in a class action is vastly superior to leaving each of them to fend for themselves in litigation against a large mortgage servicer. Given the relatively small amounts at issue for individual borrowers, it is unlikely that class members even could bring their claims on an individual basis. *See Hofstetter*, 2011 WL 1225900, at *16 ("[T]he class action mechanism is a superior method for resolving these claims[] because the cost of litigation likely would not be justified without aggregating them together."); *Williams*, 280 F.R.D. at 675 ("Since the damage amounts allegedly owed to each individual [borrower] are relatively low … the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits."). Moreover, even if class members were able to individually prosecute their claims, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter Plaintiffs' proposed Preliminary Approval Order.

Dated: January 2, 2015 NICHOLS KASTER, PLLP


/s/ Kai H. Richter
Kai H. Richter, MN Bar No. 0296545*
Joseph C. Hashmall, MN Bar No. 0392610*
    * admitted *pro hac vice*
80 South Eighth Streeet
4600 IDS Center
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878
Email:  krichter@nka.com
        jhashmall@nka.com

*AND*

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Archie I. Grubb, II (GRU105)
Andrew E. Brashier (BRA156)
218 Commerce Street
Post Office Box 4160 (36103)
Montgomery, Alabama  36104
Telephone:  (334) 269-2343
Facsimile:   (334) 954-7555
Email:  archie.grubb@beasleyallen.com
        andrew.brashier@beasleyallen.com

ATTORNEYS FOR PLAINTIFFS